FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 30 2022 ★
LONG ISLAND OFFICE



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

DONNA MCCREADY

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

U.S.P.S

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. CV 22 5899
*(to be filled in by the Clerk's Office)*

Jury Trial: ☑ Yes ☐ No
*(check one)*

AZRACK, J.

SHIELDS, M.J.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: DONNA MCCREADY
Street Address: 819 NOSTRAND AVE
City and County: UNIONDALE
State and Zip Code: NY 11553
Telephone Number: (516) 444-2223
E-mail Address:

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1
U.S. POSTAL SERVICE
Name: POSTMASTER GENERAL
Job or Title (if known): LOUIS DE JOY
Street Address:
City and County: WASHINGTON, DC
State and Zip Code:
Telephone Number:
E-mail Address (if known):

Defendant No. 2 (NO LONGER AT POSTAL SVC.)
Name: KEVIN RYNNE POSTMA
Job or Title (if known): POSTMASTER, HEMP NY
Street Address: 200 FULTON AVE
City and County: Hempstead, NY 11551

RESIDES IN WILLISTON PARK, NY

☑ Other federal law *(specify the federal law)*: FMLA FRAUD By EMPLOYER KEVIN RYNNE JOSEPH SZALA

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☑ Failure to promote me. 2X (TWICE)
- ☑ Failure to accommodate my disability. * DISREGARDED my SENIORITY
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: WITNESS INTERVIEWED for ANOTHER EMPLOYEE LAWSUIT

OT GIVEN TO EVERYONE BELOW ME IN SENIORITY

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

Approx 2015 – 2019

C. I believe that defendant(s) *(check one)*:

KEVIN RYNNE HAS BEEN INSIDE THE HEMP. P.O AND UNIONDALE P.O TAMPERING WITH my MAIL

☑ is/are still committing these acts against me.

☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☑ race BLACK AMERICAN

☑ color BLACK

☑ gender/sex WOMEN/FEMALE

☐ religion CHRISTIAN

☐ national origin

☑ age. My year of birth is 5/13/63 *(Give your year of birth only if you are asserting a claim of age discrimination.)* OVER 40 +

☐ disability or perceived disability *(specify disability)* OCCUPATIONAL ASTHMA/COPD CAUSED BY POSTAL FACILITY

E. The facts of my case are as follows. Attach additional pages if needed.

MR. KEVIN RYNNE KEPT CREATING FMLA CASES USING my EMPLOYEE #

TRAUMATIC INJURY — IN 2019 I WAS INJURED IN THE BUILDING AFTER BEING INSIDE OF AN AREA THAT HAD NO AIR CONDITIONING OR FAN. MY LEGS BUCKLED, I FELT FAINT AND KEPT CHOKING.

OCCUPATIONAL ILLNESS BEGAN 2014/2015 AND WAS CONFIRMED IN 2017 BY 3 DOCTORS AND — SINCE OCTOBER 2017 I HAD BEEN COMPLAINING AND HAD DOCTORS' NOTES STATING I COULD NOT BE IN EXTREME COLD OR EXTREME HEAT. DUE TO my OCCUPATIONAL CONDITION ~~TO BE FACETIOUS FOR 2 YRS KEVIN~~ RYNNE WOULD PURPOSELY TURN THE AIR ON HIGH BLAST AND LAUGH AS I CHOKED! AS SUPERVISORS TRIED TO ASSIST ME. HE WOULD THREATEN THEM

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

(NIOSH REPORT 25 PAGES)

* PLEASE SEE ATTACHED

DURING THE YEAR 2017 IN MONTH OF NOVEMBER, MR. DAVID KUNG TOOK SICK LEAVE. HE WAS MY SUPVR WHO ALSO DID THE TIMEKEEPING. DAVID KUNG LITERALLY HAD TEARS IN HIS EYES ROLLING DOWN DUE TO MR. KEVIN RYNNES ABUSE AS DAVID HAD TRIED TO MAKE SURE I WAS PAID CORRECTLY.

ON OCTOBER 3, 2017 I DROVE TO THE DEPT OF LABOR AT 1400 OLD COUNTRY ROAD, WESTBURY NY I VISITED THE HEALTH + SAFETY OFFICE (Dept of LABOR) OSHA AND LABOR DEPT IN REGARDS TO MY HEALTH AND FMLA VIOLATIONS by MY EMPLOYER USPS, MGR KEVIN RYNNE.

THERE I SPOKE WITH SUSAN GREEN WHO ASKED THAT I RETURN AT A LATER DATE BECAUSE TRISHA PREPPETIT WAS THE ONLY FMLA COORDINATOR AND WAS EXTREMELY BUSY. I HAVE CASE #S IN REGARDS TO HER INVESTIGATION. THERE WERE WEEKS AT A TIME HE TOLD ME "GO HOME THERE'S NO WORK HERE FOR YOU EVEN AT CHRISTMAS

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

08/26/2019 AUGUST 26, 2019

B. The Equal Employment Opportunity Commission *(check one)*:

- ☐ has not issued a Notice of Right to Sue letter.
- ☑ issued a Notice of Right to Sue letter, which I received on *(date)* JULY 31st, 2022 (DATED JULY 12, 2022)

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

- ☑ 60 days or more have elapsed.
- ☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

2 CASES IN DEPT OF LABOR

MEDICAL BILLS

*LOST OVERTIME

FRONT PAY AND BACKPAY

(KEVIN TOOK MY TIMECARD *3 MOS)

THE DAMAGES I AM SEEKING ARE MY LOSS IN WAGES. ON FEB 2, ~~2022~~ 2019 MY DR. ASKED THAT I STAY OFF OF MY WINDOW DUTIES FOR ONE WK DUE TO A TOUCH OF PNEUMONIA. KEVIN RYNNE SCREAMED AT ME IN FRONT OF OTHER CO WORKERS AND TOLD ME DONT COME BACK TO WORK UNTIL I CALL YOU BACK. (I HAVE OVER 40 VOICE RECORDINGS SUPVR MR JOHN BRUSH CALLED SEVERAL TIMES STATING HE NEEDED ME.)

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 30th September, 20 2022

Signature of Plaintiff Donna Mccready

Printed Name of Plaintiff DONNA MCCREADY

① New York State BAR Association
800 582-2452- Ask for pro bono attorney
② USDC-631-712-6000 - 100 Federal Plaza, Central Islip NY 11722
Court Appoints Attorney

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Donna S. McCready, a/k/a
Lashaunda G.,[1]
Complainant,

v.

Louis DeJoy,
Postmaster General,
United States Postal Service
(Northeast Area),
Agency.

Appeal No. 2021001201

Hearing No. 520-2020-00393X

Agency No. 4B-117-0045-19

## DECISION

Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's October 15, 2020 final decision concerning an equal employment opportunity (EEO) complaint claiming employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq., and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq.

## BACKGROUND

During the period at issue, Complainant worked as a Full-Time Sales Services/Distribution Associate at the Agency's Hempstead Post Office in Hempstead, New York.

On August 26, 2019, Complainant filed a formal EEO complaint claiming that the Agency subjected her to discriminatory harassment/hostile work environment based on race (Black), sex (female), disability, age (YOB: 1963), and in reprisal for prior protected EEO activity[2] when:

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2. beginning on or about March 25, 2019, and continuing, Complainant's request for reasonable accommodation has not been granted and she is being sent home;

3. on April 1, 2019, Complainant was charged sixteen hours of Annual Leave for March 26, 2019, and March 27, 2019;

4. beginning on an unspecified date and ongoing, Complainant has not been afforded the opportunity to work overtime;

5. on an unspecified date(s), management disclosed Complainant's medical information with co-workers;

6. on unspecified date(s) and ongoing, Complainant was humiliated and spoken to inappropriately on the workroom floor;

7. on unspecified date(s) and ongoing, Complainant's request for Sick Leave and/or Annual Leave is being charged to Leave without Pay (LWOP);

8. on unspecified date(s) and ongoing, management is tampering with Complainant's timecard and using her employee ID to call Complainant in for sick leave; and

9. on unspecified date(s), Complainant was non-selected for two promotions.[3]

After its investigation, the Agency provided Complainant with a copy of the report of investigation and notice of right to request a hearing before an Equal Employment Opportunity Commission (EEOC or Commission) Administrative Judge (AJ). Complainant timely requested a hearing but subsequently withdrew the request.

---

[2] Complainant testified that she had filed three prior EEO complaints against her Postmaster who Complainant identifies as one of the responsible management officials in the instant complaint. The Postmaster confirmed that he was aware of Complainant's prior EEO activity since 2010.

[3] The record indicates that Complainant's formal complaint included another claim which the Agency dismissed. On appeal, Complainant does not dispute this dismissal. Therefore, we need not address this claim in our discussion below.

On October 15, 2020, the Agency issued the instant final decision, pursuant to 29 C.F.R. § 1614.110(b), finding no discrimination.[4]

The instant appeal followed.

## ANALYSIS AND FINDINGS

### *Reasonable Accommodation*

To establish that she was denied a reasonable accommodation, Complainant must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a "qualified" individual with a disability pursuant to 29 C.F.R. § 1630.2(m); and (3) the Agency failed to provide her with a reasonable accommodation. See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (Enforcement Guidance), EEOC Notice No. 915.002 (Oct. 17, 2002). A qualified person with a disability is an individual who can perform the essential functions of the position with or without an accommodation. As further explained below, the evidence shows that Complainant is not a qualified individual with a disability within the meaning of the Rehabilitation Act.

Complainant testified that she had several medical conditions which included being diagnosed with a blood disorder since she was in her mid-twenties;[5] acute bronchitis around 2015; and a respiratory diagnosis in 2017. Complainant explained that her medical conditions were permanent. However, Complainant clarified that these conditions did not interfere with her performance of her work duties. Complainant further explained that the physician notes which she provided to her Postmaster indicated that she could not be exposed to extreme cold air and that she required a "sit down job" if she feels pain or becomes dizzy. Complainant indicated that one physician note suggested that she spend four hours standing and four hours sitting during the workday. Complainant also explained that she cannot walk long distances and she cannot dance.

Complainant explained that she submitted two reasonable accommodation requests – the first one covering February 2019 to April 2019, and a second request covering May 2019 to August 2019. Complainant indicated that the requests included a schedule change so that she could attend doctor and medical appointments. Complainant stated that her first request was denied. Complainant further testified that she submitted her reasonable accommodation request to the Postmaster in February 2019, but she did not meet with the Disability Reasonable Accommodation Committee (DRAC) until March 22, 2019. Despite having the March 2019 DRAC meeting, Complainant stated that "nothing was accomplished."

---

[4] The Agency initially dismissed claim 9 on procedural grounds, but ultimately decided to adjudicate this claim on the merits. Therefore, we need not address the Agency's initial dismissal of this claim.

[5] Complainant clarified that no one in the office knew that she had this condition.

Complainant indicated that her request for a schedule change was denied and beginning on March 15. 2019 through April 14 or 15. 2019. the Postmaster removed Complainant from the work schedule and sent her home if she reported for work on the days she requested a schedule change because there was no work for her to complete. Consequently. Complainant stated that since August 6. 2019. she has been on LWOP status.

As further discussed below, our review of the record reflects that the Agency did not violate the Rehabilitation Act when the DRAC denied her reasonable accommodation request on April 19. 2019.

The record indicates that Complainant failed to provide adequate medical documentation to substantiate her reasonable accommodation requests. A copy of Complainant's reasonable accommodation is undated and omits any mention of Complainant's medical condition or diagnosis. Notably, on the form. Complainant states, "I am not disabled!" The request also notes that Complainant was able to throw parcels and sort the mail, but she could not work the retail window because of cold air. and due to stress caused by management. Consequently. Complainant requested a change in duty hours to attend daily treatments and routine follow-up appointments and she requested not to work the retail window.

The record further indicates that S1 processed Complainant's request on February 25. 2019. when he completed a referral to the DRAC. S1 also noted on the referral form that "no [medical] documentation was submitted" along with Complainant's accommodation request.

Although S1 and the Postmaster acknowledged that Complainant had a Family Medical Leave Act (FMLA) case, both individuals indicated that they were unaware of Complainant's specific medical condition.

The record indicates that Complainant attended a DRAC meeting on March 22. 2019. However. the Labor Relations Manager (LR Manager). who served as chair of the DRAC, noted that Complainant failed to submit current medical documentation[6] supporting her request. The record indicates that on April 10. 2019. the DRAC requested medical documentation from Complainant. After Complainant failed to comply, the DRAC issued an April 19. 2019 letter denying her request for accommodation (a change in work hours and no assignment to work the retail window) because the committee could not make a determination on whether Complainant was a qualified individual with a disability in need of accommodation. Therefore, this denial of accommodation does not result in a violation of the Rehabilitation Act because Complainant failed to submit the required documentation to substantiate her need for accommodation.

However, the record indicates that Complainant submitted medical documentation related to her request after the Agency's April 19. 2019 denial.

---

[6] The record includes medical documentation Complainant previously submitted to management. However, Complainant had not provided medical documentation specific to the instant reasonable accommodation request.

Complainant submitted an August 6. 2019 physician note indicating that Complainant could not return to work until air quality tests were conducted at the post office. S1 noted. and the LR Manager confirmed. that Complainant's absences from work due to the pending air quality tests resulted in her being charged LWOP during this time because Complainant did not have any leave left.

Complainant also submitted another physician's note. dated October 10. 2019. indicating that Complainant could return to work permitting that she was not exposed to dust. fumes. or irritants. In response. S1 requested, on October 22. 2019. that Complainant submit relevant medical documentation in support of this request. Nevertheless. Complainant later provided a November 26. 2019 physician's note indicated that based on his review of the November 6, 2019 air quality report Complainant submitted. Complainant could return to work without any work restrictions. However. despite never providing any medical documentation regarding the instant reasonable accommodation request. the Postmaster and S1 indicated that Complainant was allowed to start her workday earlier and she was not required to work the retail window for a period of time as an accommodation.

Based on this evidence. we find that Complainant has not demonstrated the Agency violated the Rehabilitation Act when it denied Complainant's requests for accommodation because Complainant failed to provide documentation to support a determination that she was a qualified individual with a disability within the meaning of the Rehabilitation Act.

***Disparate Treatment: Claims 3 – 5 and 7 – 9***

A claim of disparate treatment is examined under the three-part analysis first enunciated in McDonnell Douglas Corporation v. Green. 411 U.S. 792 (1973). For complainant to prevail. she must first establish a prima facie of discrimination by presenting facts that. if unexplained. reasonably give rise to an inference of discrimination. i.e.. that a prohibited consideration was a factor in the adverse employment action. See McDonnell Douglas. 411 U.S. at 802; Furnco Construction Corp. v. Waters. 438 U.S. 567 (1978). The burden then shifts to the agency to articulate a legitimate. nondiscriminatory reason for its actions. See Texas Department of Community Affairs v. Burdine. 450 U.S. 248. 253 (1981). Once the agency has met its burden. the complainant bears the ultimate responsibility to persuade the fact finder by a preponderance of the evidence that the agency acted on the basis of a prohibited reason. See St. Mary's Honor Center v. Hicks. 509 U.S. 502 (1993).

This established order of analysis in discrimination cases. in which the first step normally consists of determining the existence of a prima facie case. need not be followed in all cases. Where the agency has articulated a legitimate. nondiscriminatory reason for the personnel action at issue, the factual inquiry can proceed directly to the third step of the McDonnell Douglas analysis, the ultimate issue of whether complainant has shown by a preponderance of the evidence that the agency's actions were motivated by discrimination. See U.S. Postal Service Board of Governors v. Aikens. 460 U.S. 711. 713-714 (1983); Hernandez v. Department of Transportation. EEOC Request No. 05900159 (June 28. 1990); Peterson v. Department of Health

and Human Services. EEOC Request No. 05900467 (June 8, 1990); Washington v. Department of the Navy, EEOC Petition No. 03900056 (May 31, 1990).

Our review of the record reflects that the Agency articulated legitimate, nondiscriminatory reasons for its actions.

16 Hours Annual Leave Charges (Claim 3)

Complainant identified S1 or the Postmaster as the responsible management officials who changed her annual leave to LWOP for March 26, 2019 and March 27, 2019. Complainant explained that she had lab tests scheduled on the dates and question and requested that S1 approve her schedule change. However, Complainant indicated that S1 sent her home and told her that there was no work for her to complete those days.

The Postmaster and S1 testified that they had no knowledge of why Complainant was charged annual leave on the dates in question.

The record indicates that on April 1, 2019, S1 completed a request for leave form on Complainant's behalf for annual leave taken on March 26, 2019 and March 27, 2019. However, the form includes a notification indicating that Complainant refused to sign.

The time and attendance records also indicate that Complainant was charged LWOP from March 1, 2019 through March 29, 2019, except for March 26 and 27, 2019, where Complainant was charged Annual Leave – FMLA. However, an adjust pay certification noted that the incorrect leave was entered into the system and changed the LWOP hours to Annual Leave-FMLA.

Overtime Opportunities (Claim 4)

Complainant testified that the Postmaster, S1, and the Acting Supervisor denied her opportunities to work overtime hours on Saturdays and Sundays (her non-service days) even though she ranked second on the overtime seniority list. Instead, Complainant asserted that the Postmaster assigned other employees to work overtime on these days. Complainant indicated that the Postmaster said, "you're sick remember," when Complainant inquired why she was not selected to work overtime. Complainant also noted that she was a "strong Black woman," the oldest woman at the post office, and she would not submit to the Postmaster's sexual harassment.

The Postmaster explained, and S1 confirmed, that the retail window was open for five and a half hours (9am to 2:30pm) on Saturdays, while the retail window is open for 9 hours Monday through Friday. Consequently, the Postmaster indicted that fewer clerks were needed on Saturday. However, the Postmaster explained that Complainant did not agree with this reasoning. Nevertheless, a copy of Complainant's time and attendance records indicates that Complainant worked a total of 33.37 overtime hours over the period of March 30, 2019 through June 28, 2019.

Medical Disclosure (Claim 5)

Complainant indicated that the Acting Supervisor spent three days. from July 7 - 9. 2018 reading Complainant's private information in personnel files located in the back office. Complainant further indicated that the Postmaster asked a former supervisor to unlock the file cabinet that contained Complainant's FMLA documents. Complainant also asserted that the Postmaster notified her co-workers of her medical condition when she submitted her reasonable accommodation request on February 21. 2019.

Both the Postmaster and the Acting Supervisor denied disclosing Complainant's medical information and denied the events as alleged.

Sick Leave and Annual Leave Requests Changed to LWOP (Claim 7)

Complainant explained that the Postmaster has told her to stay home even when she was not sick. Complainant further explained that there were several occasions in February 2018. March 2019. and from August 6. 2019 through October 2019, where the Postmaster took her off the work schedule for no reason. Complainant indicated that she believed that the Postmaster's actions were retaliatory for her doctor's office submitting a letter for reasonable accommodation.

However, the Postmaster denied any responsibility for changing Complainant's leave requests. Instead. S1 indicated that he was responsible for entering Complainant's leave. but he did not recall why Complainant's leave was changed.

Tampered Timecard (Claim 8)

Complaint stated that on or around April 5. 2019. she received paperwork from FMLA regarding a new case number indicating that she had called in 40 hours as of April 1. 2019. Complainant explained that the Postmaster had taken her off the work schedule from March 2019 through mid-April 2019 even though Complainant was not sick. Complainant further explained that S1 asked her to sign a PS Form 3971 for the 40 hours that she was out of work. However. Complainant refused to sign this form.

The Postmaster denied tampering with Complainant's timecard and indicated that he was unaware of any management official doing so. S1 also denied tampering with Complainant's timecard and he denied using her ID to call her in for sick leave.

Non-Selections (Claim 9)

Complainant identified the Postmaster as the responsible management official for not selecting her for two level seven positions – a 2015 Lead Window Clerk position and a January 2018 Lead Clerk/Bulk Mail position. Complainant explained that she was not selected for either position because the positions were never posted.

Complainant further explained that the Postmaster abolished the Lead Clerk/Bulk Mail position in January 2018, and he selected another candidate for the Lead Window Clerk position even though Complainant believed the Selectee had less seniority, knowledge, and experience than her. Complainant attributed the Postmaster's decision not to select to her sex, age, race, disability, and prior EEO activity. Complainant noted that the Postmaster had previously instructed that Complainant receive the resignation/retirement form. Complainant further noted that when she inquired why she was not selected for the Lead Window Clerk position, the Postmaster responded, "you are sick, remember."

The Postmaster explained that the Lead Clerk position was not posted in 2015 because higher level clerk positions were not reverted. However, the Lead Clerk/Bulk Mail position was reverted but was never posted. Consequently, the Postmaster stated that Complainant did not apply for either position because neither position was posted.

The Postmaster acknowledged that the Selectee was chosen for the Leak Clerk position in January 2018. The Postmaster explained that the Selectee had already served as the Lead Clerk at the Hempstead post office since 2000, and Complainant could have bid on the position in 2000, but she failed to do so.

We acknowledge that Complainant's testimony in the record that S1 or the Postmaster changed her leave requests and tampered with her timecard and Complainant's testimony that the Acting Supervisor and the Postmaster disclosed her medical records to staff is in direct conflict to the statements provided by S1, the Postmaster, and the Acting Supervisor. Here, however, Complainant effectively waived her right to have this matter considered before an EEOC AJ when she elected that the Agency to issue a final decision in the instant complaint. If Complainant had not withdrawn her initial requested for hearing, then the AJ may have developed the record more through discovery and cross-examination of witness. Moreover, we lack the possible benefits of an EEOC AJ's credibility determinations. We are left with Complainant's version of events and that of Agency management which are completely at odds. As such, the evidence of record was at best, in equipoise. See Complainant v. Dep't of Health and Human Servs., EEOC Appeal No. 0120122134 (Sep. 24, 2014) citing Lore v. Dep't of Homeland Sec., EEOC Appeal No. 0120113283 (Sep. 13, 2013) and Brand v. Dep't of Agric., EEOC Appeal No. 0120102187 (Aug. 23, 2012).

After careful consideration of the record, we conclude that neither during the investigation, nor on appeal, has Complainant proven, by a preponderance of the evidence, that these proffered reasons for the disputed actions were a pretext for unlawful discrimination based on Complainant's race, sex, age, or reprisal for prior protected EEO activity.

***Harassment/Hostile Work Environment: Claim 6***

To prove her claim of hostile environment harassment, Complainant must establish that she was subjected to conduct that was either so severe or so pervasive that a "reasonable person" in Complainant's position would have found the conduct to be hostile or abusive.

Complainant must also prove that the conduct was taken because of a protected basis – in this case, her race, sex, age, or reprisal for prior protected EEO activity. Only if Complainant establishes both of those elements – hostility and motive – will the question of Agency liability present itself. See Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982); Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). See also, Enforcement Guidance on Harris v. Forklift Systems Inc., EEOC Notice No. 915.002 (March 8, 1994).

As an initial matter, Complainant's additional claim of discriminatory harassment as evidenced by the events in claims 3 – 5, and 7 – 9 are precluded based on our findings above that Complainant failed to establish that any of the actions taken by the Agency were motivated by her race, sex, age, or reprisal for prior protected EEO activity. See Oakley v. U.S. Postal Service, EEOC Appeal No. 019982923 (Sept. 21, 2000).

Humiliation Incident (Claim 6)

Complainant testified that the Acting Supervisor yelled at her, in front of customers, on August 17, 2018 and instructed her to return to the window. Complainant explained that at the time she was throwing box mail because it was freezing in the lobby. The air conditioning was on high and the air vent was located above Complainant's head. Complainant further testified that the Acting Supervisor contacted the Postmaster who instructed management to have Complainant removed from the building.

However, the Acting Supervisor denied the alleged events. The Postmaster also indicated that he did not recall the events as alleged, and he further indicated that Complainant had not notified him or management that she believed she was being subjected to a hostile work environment. S1 also stated that he was unaware that Complainant had complained to management about being harassed.

We find that considering this allegation, even if true, Complainant has not presented sufficient credible evidence demonstrating that considerations of her race, sex, age, or retaliatory animus motivated management's actions toward Complainant. Aside from Complainant's assertions, there is no other evidence to substantiate her claims. Consequently, we find that the incidents Complainant alleges were not sufficiently severe or pervasive as to constitute hostile work environment/harassment under Commission regulation. The incidents involved are of a type that typically arise out of workplace conflicts or communications. However, EEO laws are not a civility code. Rather, they forbid "only behavior so objectively offensive as to alter the conditions of the victim's employment." Oncale, 523 U.S. 75, 81 (1998). Additionally, aside from Complainant's bare assertions there is simply no evidence that the disputed actions were motivated in any way by Complainant's race, sex, age, or reprisal for prior protected EEO activity, and therefore, Complainant's claim of discriminatory harassment is precluded. See Oakley v. U.S. Postal Service, EEOC Appeal No. 019982923 (Sept. 21, 2000).

## CONCLUSION

We AFFIRM the Agency's final decision because the preponderance of the evidence of record does not establish that discrimination or unlawful retaliation occurred.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx

Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

July 12, 2022
Date

CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was provided to the parties.** I certify that on the date below this decision was provided to the following recipients via the means identified for each recipient:

Donna S. McCready
819 Nostrand Avenue
Uniondale, NY 11553
Via U.S. Mail

Christopher L. Van DeWater
100 Quentin Roosevelt Blvd.
Ste. 208
Garden City, NY 11530
Via U.S. Mail

U.S. Postal Service (Northeast)
NEEOISO - Appeals
U.S. Postal Service
Via FedSEP

July 12, 2022
Date

Compliance and Control Division