**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Donna McCready,<br><br>                                      Plaintiff,<br><br>            -v-<br><br>United States Postal Service, Postmaster General Doug Tulino; Kevin Rynne, Postmaster, Hempstead, NY,<br><br>                                      Defendants. | 2:22-cv-5899<br>(NJC) (AYS) |

<u>**MEMORANDUM AND ORDER**</u>

NUSRAT J. CHOUDHURY, United States District Judge:

On September 30, 2022, Plaintiff Donna McCready ("McCready"), acting pro se, filed this case against her former employer the United States Postal Service ("USPS"), the Postmaster General of the USPS[1] ("Postmaster General"), and Kevin Rynne, the Postmaster of USPS's branch located in Hempstead, New York ("Rynne") (together, "Defendants"). (Compl., ECF No. 1 at 1–8.) Specifically, the Complaint brings discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 ("ADEA"), and the

---

[1] At the time McCready filed the Complaint, the Postmaster General was Louis DeJoy. The caption is updated pursuant to Rule 25(d), Fed. R. Civ. P., to reflect that Doug Tulino is currently the Acting Postmaster General. *See* Mar. 24, 2025 Statement from Louis DeJoy, *available at* https://about.usps.com/newsroom/national-releases/2025/0324-usps-pmg-ceo-leadership-transition.htm; Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–17 ("ADA"), as well as a fraud

claim under the Family and Medical Leave Act ("FMLA"). (Compl. ¶ II.)

Before the Court is the Postmaster General's Motion to Dismiss McCready's Complaint

in its entirety ("Motion") under Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure

("Fed. R. Civ. P."). (Mot., ECF Nos. 38–45.)[2] For the following reasons, the Court grants the

Motion and dismisses the Complaint in its entirety with leave to amend, as set forth below.

## BACKGROUND

The following facts are taken from McCready's Complaint (Compl.), as well as the

following documents:

(1) the Equal Opportunity Employment Commission's ("EEOC") July 12, 2022 decision
denying McCready's EEOC claim ("EEOC Decision," ECF No. 1 at 9–20), which
McCready attached to the Complaint;

(2) McCready's letters regarding her requests for a reasonable accommodation ("Reasonable
Accommodation Request Letters," ECF No. 40-2); and

(3) McCready's May 13, 2019 "information for pre-complaint counseling" document
submitted to the EEOC ("EEOC Pre-Complaint Filing," ECF No. 43-1), which the
Postmaster General filed in support of his Motion.

## I.    THE COMPLAINT

McCready, born on May 13, 1963, is a Black American Christian woman who was

employed as a Full-Time Sales Services/Distribution Associate at a USPS branch located in

Hempstead, New York. (Compl. ¶¶ I.C, II.D; EEOC Decision at 1.)

---

[2] As the Postmaster General correctly notes in his opening brief, the USPS and Rynne are not
proper parties to this action; accordingly, they have not signed on to this Motion. Mem. Supp.
Mot. Dismiss, ECF No. 39 at 1 n.1; *see also infra*, Discussion Section I.a.

McCready names the Postmaster General, the USPS, and Rynne as the Defendants in her Complaint filed using the Court's form for employment discrimination complaints. (Compl. ¶ I.B.) The Complaint alleges discriminatory and retaliatory conduct during the years 2015 to 2019. (*Id*. ¶ III.B.) McCready checked the boxes on the Complaint form to allege that her claims are brought pursuant to Title VII, the ADEA, and the ADA, and wrote the following in the space that calls for any other federal law pursuant to which her claims are brought: "FMLA FRAUD BY EMPLOYER KEVIN RYNNE JOSEPH SZALA." (*Id*. ¶ II.A.) In the spaces on the Complaint form that ask the plaintiff to state the basis of the claimed discrimination, McCready checked the boxes for race (writing "Black American"), color (writing "Black"), gender (writing "woman/female"), and age (writing "over 40+"). (*Id*. ¶ III.D.) Although McCready did not check the box for religion, she filled in the space beside it with "Christian." (*Id*.) Similarly, McCready did not check the box for disability yet wrote "Occupational Asthma/COPD caused by Postal Facility." (*Id.*)

McCready claims that, prior to her alleged unlawful termination, she was, among other things: (1) twice denied a promotion; (2) denied overtime opportunities because her seniority was disregarded; (3) denied an accommodation for her disability alleged to be "occupational asthma/COPD caused by postal facility" and "a touch of pneumonia"; and (4) the victim of retaliation for her testimony against Rynne in a lawsuit brought by another employee. (*Id.* ¶ III.E.) McCready checked the box on the Complaint form to allege that Defendants are "still committing these acts against [her]" and wrote in the margin "KEVIN RYNNE HAS BEEN INSIDE THE HEMP. P.O AND UNIONDALE P.O TAMPERING WITH MY MAIL." (*Id*. ¶ III.C.)

In its entirety, the fact section of McCready's Complaint alleges:

MR. KEVIN RYNNE KEPT CREATING FMLA CASES USING MY EMPLOYEE #

TRAUMATIC INJURY

IN 2019 I WAS INJURED IN THE BUILDING AFTER BEING IN THE AREA THAT HAD NO AIR CONDITIONING OR FAN. MY LEGS BUCKLED, I FELT FAINT AND KEPT CHOKING.

OCCUPATIONAL ILLNESS BEGAN 2014-2015 AND WAS CONFIRMED IN 2017 BY <u>3 DOCTORS AND</u> (NIOSH REPORT 25 PAGES)

SINCE OCTOBER 2017 I HAD BEEN COMPLAINING AND HAD DOCTORS' NOTES STATING I COULD NOT BE IN EXTREME COLD OR EXTREME HEAT. DUE TO MY OCCUPATIONAL CONDITION TO BE FACETIOUS FOR 2 YRS KEVIN RYNNE WOULD PURPOSELY TURN THE AIR ON HIGH BLAST AND LAUGH AS I CHOKED! AS SUPERVISORS TRIED TO ASSIST ME. HE WOULD THREATEN THEM

DURING THE YEAR 2017 IN MONTH OF NOVEMBER, MR. DAVID KUNG TOOK SICK LEAVE. HE WAS MY SUPVR WHO ALSO DID THE TIMEKEEPING. DAVID KUNG LITERALLY HAD TEARS IN HIS EYES ROLLING DOWN DUE TO MR. KEVIN RYNNES ABUSE AS DAVID HAD TRIED TO MAKE SURE I WAS PAID CORRECTLY.

ON OCTOBER 3, 2017 I DROVE TO THE DEPT OF LABOR AT 1400 OLD COUNTRY ROAD, WESTBURY NY I VISITED THE HEALTH + SAFETY OFFICE (Dept of LABOR) OSHA AND LABOR DEPT IN REGARDS TO MY HEALTH AND FMLA VIOLATIONS BY MY EMPLOYER USPS, MGR KEVIN RYNNE.

THERE I SPOKE WITH SUSAN GREEN WHO ASKED THAT I RETURN AT A LATER DATE BECAUSE TRISHA PREPPETIT WAS THE ONLY FMLA COORDINATOR AND WAS EXTREMELY BUSY. I HAVE CASE #S IN REGARDS TO HER INVESTIGATION. THERE WERE WEEKS AT A TIME HE TOLD ME "GO HOME THERE'S NO WORK HERE FOR YOU EVEN AT CHRISTMAS.

(*Id.* ¶ III.E (emphasis in original).)

4

In the space on the complaint form that asks for the relief sought, McCready wrote:

> THE DAMAGES I AM SEEKING ARE MY LOSS IN WAGES. ON FEB 2,
> 2019 MY DR. ASKED THAT I STAY OFF OF MY WINDOW DUTIES FOR
> <u>ONE</u> WK DUE TO A TOUCH OF PNEUMONIA. KEVIN RYNNE
> SCREAMED AT ME IN FRONT OF OTHER CO WORKERS AND TOLD ME
> DONT COME BACK TO WORK UNTIL I CALL YOU BACK (I HAVE OVER
> 40 VOICE RECORDINGS) SUPVR. MR JOHN BRUSH CALLED SEVERAL
> TIMES STATING HE NEEDED ME. 2 CASES IN DEPT OF LABOR
> MEDICAL BILLS *LOST OVERTIME FRONT PAY AND BACKPAY
> (KEVIN TOOK MY TIMECARD *3 <u>MOS</u>)

(*Id.* ¶ V (emphasis in original).)

## II.    THE EEOC DECISION

On August 26, 2019, McCready filed a formal EEOC Charge against the Postmaster

General and the USPS,[3] alleging employment discrimination and retaliation in violation of Title

VII, the ADEA, and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791

*et seq.* ("Rehabilitation Act"). (EEOC Decision at 1.) Specifically, McCready alleged in the

EEOC Charge the following:

> that the Agency subjected her to discriminatory harassment/hostile work
> environment based on race (Black), sex (female), disability, age (YOB: 1963),
> and in reprisal for prior protected EEO activity when:
>
> 2. beginning on or about March 25, 2019, and continuing, Complainant's request
> for reasonable accommodation has not been granted and she is being sent home;[4]
>
> 3. on April 1, 2019, Complainant was charged sixteen hours of Annual Leave for
> March 26, 2019 and March 27, 2019;

---

[3] The EEOC Decision refers to McCready as the "Complainant" and the Postmaster General and the USPS collectively as the "Agency."

[4] The EEOC Decision's numbering begins with 2, and a footnote in the EEOC Decision explains that there was an additional claim, which the EEOC previously dismissed without objection from McCready. Accordingly, the EEOC Decision omits that claim was from its discussion. (ECF No. 1 at 10 at n.3.)

4. beginning on an unspecified date and ongoing, Complainant has not been afforded the opportunity to work overtime;

5. on an unspecified date(s), management disclosed Complainant's medical information with co-workers;

6. on an unspecified date(s) and ongoing, Complainant was humiliated and spoken to inappropriately on the workroom floor;

7. on unspecified date(s) and ongoing, Complainant's request for Sick Leave and/or Annual Leave is being charged to Leave without Pay (LWOP);

8. on unspecified date(s) and ongoing, management is tampering with Complainant's timecard and using her employee ID to call Complainant in for sick leave; and

9. on unspecified date(s), Complainant was non-selected for two promotions.

(*Id*. at 1–2.) The EEOC issued its final decision on October 15, 2020 finding no discrimination, and McCready appealed that decision to the EEOC Office of Federal Operations. (*Id*. at 3.) On July 12, 2022, the Office of Federal Operations affirmed the EEOC's final decision. (*Id*. at 10.)

## PROCEDURAL HISTORY

On September 30, 2022, McCready, acting pro se, filed an in forma pauperis ("IFP") Complaint alleging employment discrimination and retaliation pursuant to Title VII, the ADA,[5]

---

[5] The ADA does not provide a remedy for a federal employee claiming employment discrimination. *See* 42 U.S.C. § 12111(5)(B)(i). Rather, a federal employee's claim of discrimination based on disability arises under the Rehabilitation Act, 29 U.S.C. § 701, *et seq*. *See, e.g.*, *Chilson v. Del Toro*, No. 3:23-cv-1138, 2024 WL 4950104, at *1 (N.D.N.Y. Dec. 3, 2024) ("[T]he ADA does not apply to federal employers." (citing *Knope v. Garland*, No. 20-cv-3274, 2021 WL 5183536, *1 n.2 (2d Cir. Nov. 9, 2021))); *see also Hodges v. Att'y Gen. of U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) ("In the Second Circuit, Section 501 of the Rehabilitation Act provides the exclusive route by which federal employees may raise claims of employment discrimination on the basis of disability."). Given that the regulatory schemes of the ADA and the Rehabilitation Act are similar, and since McCready is proceeding pro se, her Complaint will be construed as raising claims under the Rehabilitation Act. *See, e.g., Killoran v. Westhampton Beach Sch. Dist.*, No. 22-204-CV, 2023 WL 4503278, at *2 (2d Cir. July 13, 2023)

the ADEA, and the FMLA against the USPS, the Postmaster General, and Rynne. (Compl.; IFP Mot., ECF No. 2.) McCready also filed a motion for the appointment of pro bono counsel. (Pro Bono Counsel Mot., ECF No. 3.) By Order dated October 20, 2022, District Judge Joan M. Azrack, to whom this case was previously assigned, granted the IFP motion but denied the pro bono counsel motion without prejudice and with leave to renew at a later stage in these proceedings. (Order, ECF No. 7.)

Given McCready's IFP status, the Court ordered the United States Marshal Service ("USMS") to serve the summonses and Complaint upon the Defendants on McCready's behalf, in accordance with 28 U.S.C. § 1915(d). On November 30, 2022, USMS filed returns of service reflecting that it successfully served the Postmaster General and the USPS but was not able to serve Rynne. (ECF Nos. 9–11.) As for Rynne, USMS attempted service at the USPS's Hempstead branch, but, as noted on the Return of Service, the Hempstead branch would not accept service on Rynne's behalf because he is retired. (ECF No. 9.) Accordingly, by letter dated December 13, 2022, the Court's Pro Se Office requested that McCready provide an alternate address at which Rynne could be served. (Ltr., ECF No. 12.) In response, McCready provided two additional addresses for Rynne, as well as the names and addresses of several other individuals who are not named as parties in this action. (Ltr., ECF No. 13.) The Clerk of Court

---

("Though there are 'subtle differences' between the ADA and the Rehabilitation Act, we generally 'treat claims under the two statutes identically,' applying the same standards to both." (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003))); *see also Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1999) (holding that the ADA and the Rehabilitation Act "impose identical requirements"). Further, McCready's Opposition Brief makes clear that she intended to bring her claims pursuant to the Rehabilitation Act rather than the ADA. *See* Opp'n, ECF No. 36-1 at 4 ("Plaintiff respectfully submits this memorandum of law in support of her opposition to dismiss the complaint brought by Defendant Louis DeJoy, Postmaster General ('Defendant') pursuant to Title VII, 42 U.S.C. § 2000 *et seq*.; the Rehabilitation Act, 29 U.S.C. § 791; and the Age Discrimination in Employment Act, 29 U.S.C. § 621.").

has since issued two summonses as to Rynne (ECF Nos. 14, 19), but USMS's attempts to serve him at either of the addresses provided by McCready have been unsuccessful (ECF Nos. 18, 22). McCready did not undertake any further efforts to effect service of Rynne.

On January 26, 2023, the Postmaster General filed a letter advising the Court of the following:

> The United States Postal Service and Postmaster Kevin Rynne are inappropriately named as defendants in this Title VII action. *Kirton v. United States DOJ*, No. 16-CV-6539(DLI)(RLM), 2018 U.S. Dist. LEXIS 166721, at *7 (E.D.N.Y. Sep. 27, 2018)("The proper defendant in Title VII actions against a federal agency is that agency's head."); *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("We note that individuals are not subject to liability under Title VII.").

(ECF No. 16 at 1, n.1.)

On March 24, 2023, the Postmaster General submitted a letter motion seeking a pre-motion conference in anticipation of filing a motion to dismiss the Complaint. (Ltr. Mot., ECF No. 20.) In the letter, the Postmaster General again asserted that the "United States Postal Service and Kevin Rynne are improperly named as defendants" and set forth arguments for dismissal under Rules 12(b)(1) and (b)(6). (*Id.*) McCready did not timely respond to the Postmaster General's letter motion, and accordingly, on April 19, 2023, Judge Azrack ordered McCready to file any response by May 10, 2023. (Elec. Order, Apr. 19, 2023.) McCready filed a letter on May 4, 2023, stating her intention to proceed with her case. (Opp'n Ltr., ECF No. 21.) In her letter response, McCready did not object to the Postmaster General's assertion that he is the sole proper defendant. (*Id.*)

On October 11, 2023, the case was reassigned to this Court's docket. Pursuant to the briefing schedule set forth by Judge Azrack, on November 9, 2023, the Postmaster General filed the fully briefed Motion to Dismiss, including McCready's voluminous opposition papers. (ECF

Nos. 27–30.) McCready also filed a 12-page letter on November 28, 2023 in further opposition to the Motion to Dismiss. (ECF No. 31.)

Upon reviewing the motion papers and record, the Court discovered that an incomplete copy of the Complaint had been docketed and directed the Clerk of Court to scan and file a complete copy of the Complaint. Because Defendants had not had the opportunity to review the full Complaint prior submitting their briefing, on May 22, 2024, the Court denied the Postmaster General's Motion to Dismiss the Complaint without prejudice and with leave to renew pending the Postmaster General's review of the full Complaint. (Elec. Order, May 22, 2024.) Further, the Court set a briefing schedule on any renewed motion to dismiss that required that the fully briefed motion be filed by July 10, 2024. (*Id*.) The Electronic Order instructed the parties to comply with this Court's bundling practice and referred them to Individual Rule 5.2 of the undersigned's rules. (*Id*.) Upon the Postmaster General's request, the Court extended the briefing schedule through July 31, 2024. (Elec. Order, June 19, 2024.)

The record reflects that, on June 21, 2024, the Postmaster served on McCready a document titled "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings." ("Postmaster's Notice," ECF No. 41.) The Postmaster's Notice states that the Postmaster General "submitted additional written materials" outside of the Complaint to support his motion to dismiss; accordingly, "the Court may treat this motion as a motion for summary judgment under Rule 56, Fed. R. Civ. P." (*Id.* at 1.) The Postmaster's Notice also represents to McCready that, in the event the Court converts the Postmaster General's motion to a motion for summary judgment, McCready "must submit evidence . . . countering the facts asserted by the [Postmaster] and raising specific facts that

support [McCready's] claim." (*Id.* at 1–2.) The Postmaster's Notice specifically states: "If you have proof of your claim, now is the time to submit it." (*Id.* at 2.)[6]

Apparently responding to the Postmaster's Notice, on July 22, 2024, McCready filed a 66-page document entitled "Book 1 of 2," comprised of exhibits in support of her opposition to the Motion. (Pl. Ex. Book 1, ECF No. 35.) On July 23, 2024, McCready filed a 38-page

_____

[6] The Postmaster's Notice essentially instructs McCready, a pro se plaintiff, to treat the Postmaster General's Motion to Dismiss as a motion for summary judgment even though no discovery has been conducted in this case. (*See* Postmaster's Notice at 1.) The Postmaster General, who is represented by counsel, was aware that different legal standards and procedural rules apply to the Court's resolution of a motion to dismiss versus a motion for summary judgment. Thus, the Postmaster General misrepresented the relevant procedure when improperly instructing McCready to file extrinsic evidence along with her papers in opposition to the Postmaster General's Motion to Dismiss. (Postmaster's Notice at 2.)

It is correct that the Court must treat a motion to dismiss as a motion for summary judgment where "matters outside the pleadings are presented" to the Court and the Court does "not exclude[]" the materials. Rule 12(d), Fed. R. Civ. P. However, the Postmaster General has provided no basis for this Court to treat the instant Motion as a motion for summary judgment, given that the limited extrinsic documents that the Postmaster General submitted are attached to the Complaint and/or are integral to it. If the Postmaster General had sought to move for summary judgment at this stage, he was required to file a letter seeking a pre-motion conference stating so and, if granted leave to file such motion, to comply with the requirement of Local Rule 56.1 to provide a factual statement with supporting evidence. Judge Choudhury Individual Rule 5.1; Southern and Eastern Districts of New York Local Rule 56.1.

Further, the suggestion in the Postmaster's Notice that McCready may not have an opportunity to submit extrinsic evidence on summary judgment if she did not do so in opposition to this Motion is patently incorrect. Rule 12(d) specifically requires that, in the event the Court converts a motion to dismiss into a motion for summary judgment, the Court must ensure that all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion."

On reply, the Postmaster General unfairly criticizes McCready, stating that "[McCready] filed numerous exhibits without any explanation as to what claim a particular exhibit may support" (Reply at 5) and that "many of the allegations are raised by [McCready] for the first time in her exhibits . . ." (*id.* at 1). These criticisms are misplaced in light of the fact that the Postmaster's Notice misrepresented to McCready that the instant Motion may be the only opportunity she has to submit all "proof of [her] claim." (Postmaster's Notice at 2.) As a party represented by counsel familiar with the Court's rules and legal and procedural standards above, the Postmaster General should not have made such incorrect representations.

document entitled "Book 2 of 2" and an eight-page brief in opposition to the Postmaster General's Motion to Dismiss. (Pl. Ex. Book 2, ECF No. 36; Opp'n Mot. Dismiss ("Opp'n"), ECF No. 36-1.) On July 25, 2024, McCready filed an additional eight pages of exhibits in further support of her opposition. (Pl. Ex. Book 3, ECF No. 37.) On July 31, 2024, Defendants filed a Notice of Motion to Dismiss (Mot. Dismiss ("Mot."), ECF No. 38), a Memorandum in Support (Mem. Supp. Mot. Dismiss ("Mem."), ECF No. 39), an Affidavit in Support with Exhibits (Mot. Aff., ECF No. 40), the Postmaster's Notice, and a Reply brief (Reply Supp. Mot. Dismiss ("Reply"), ECF No. 42) with an Affidavit with Exhibits (Reply Aff., ECF No. 43). On August 16, 2024, McCready filed a 26-page document in response to the Postmaster General's July 31, 2024 submission. (Pl. Sur-Reply, ECF No. 45.)[7]

## LEGAL STANDARDS

This Court is required to construe pleadings "filed by pro se litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023).[8] "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019). Nevertheless, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 09-cv-

---

[7] For the reasons set forth below, the Court may consider the exhibits submitted by both parties to determine whether subject matter jurisdiction is properly invoked and otherwise may only consider those documents to the extent that they are attached to the Complaint, incorporated in it by reference, or are integral to the Complaint. (*See infra* at Discussion Section II.)

[8] Unless otherwise indicated, referenced quotations omit all internal quotation marks, citations, footnotes, and alterations.

2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*per curiam*).

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Russo v. United States*, No. 22-1869-CV, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024) (citing *Green v. Dep't of Educ. of the City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A court considers a Rule 12(b)(1) challenge before other arguments for dismissal because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and objections moot. *See Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v. City of New York*, No. 11-cv-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").When a party raises a facial challenge to the court's subject matter jurisdiction, "the plaintiff has no evidentiary burden"; the district court need only "determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). In assessing a facial challenge to standing, a court "must take all uncontroverted facts in the complaint (or

12

petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

When a party has placed jurisdictional facts into dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," however, "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441–42 (2d Cir. 2022). When the extrinsic evidence "reveals the existence of factual problems," the plaintiff "will need to come forward with evidence controverting that presented by the defendant" regarding standing. *Lugo*, 114 F.4th at 87. "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243; *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017) (same). "[I]f the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," the plaintiffs "are entitled to rely" on the complaint's allegations. *Carter*, 822 F.3d at 57–58.

To avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Protection USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining if a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th

13

294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central School Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

If a liberal reading of a pro se complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). If, however, amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Id.*

## DISCUSSION

The Postmaster General makes six arguments in support of dismissal of the Complaint, although he does not specify which arguments are made under Rule 12(b)(1) versus Rule 12(b)(6). (*See* Mem.) First, the Postmaster General argues that McCready failed to timely exhaust her administrative remedies as required to assert claims under Title VII, the Rehabilitation Act, and the ADEA. (*Id.* at 6–9.) Second, he contends that the Complaint does not plausibly allege that McCready suffered an adverse employment action as required to state a claim for discrimination under Title VII and the ADEA. (*Id.* at 9–11.) Third, he claims that the Complaint does not state a claim for a hostile work environment under Title VII because it does not plausibly allege facts that, if true, would constitute "severe or pervasive" harassment. (*Id.* at

14

11–12.) Fourth, the Postmaster General seeks dismissal of McCready's Rehabilitation Act claim on the grounds that the Complaint does not plausibly allege that the Postmaster General failed to provide McCready a reasonable accommodation for her alleged disability and, to the extent that McCready was unable to come into work due to her disability, the Complaint does not allege that she was an "otherwise qualified individual that could perform the essential job functions." (*Id.* at 14.) Fifth, the Postmaster General argues that the FMLA claim is time-barred. (*Id.* at 14–16.) Sixth, the Postmaster General asserts that all claims against the USPS and Rynne should be dismissed because the "appropriate defendant in a Title VII action against the USPS is the Postmaster General of the United States." (*Id.* at 1 n.1 (citing *Mack v. U.S. Postal Serv.*, No. 92-cv-68, 1998 WL 546624, at *2 (E.D.N.Y. Aug. 26, 1998)).)

In opposition, McCready raises additional factual points addressing the allegations in her Complaint. First, she claims that she was denied two promotions to which she was entitled based on seniority—one in February 2018 and one on an unspecified date. (Opp'n at 6.) Second, McCready argues that she was denied a reasonable accommodation for her "occupational asthma" because "[t]here were 4 different areas in the Hempstead Post Office where I could have performed my duties as a clerk. Through the years I have witnessed others come in and due reasonable accommodations or other job duties that were not on the job injuries." (*Id.* at 5.)[9] Third, McCready argues that Rynne denied her accommodation request when she "had a touch of pneumonia" and presented a doctor's note on February 2, 2019 requesting that she not "work the window due to [her] occupational asthma condition worsening." (*Id*. at 7.) Fourth, McCready also asserts that Rynne denied her request for a reasonable accommodation in 2015 when she

---

[9] Although McCready omits the FMLA in the list of statutes pursuant to which her claims arise, she asserts facts relating to her "FMLA FRAUD" claim alleged in the Complaint. (Compl. ¶ II.)

"simply asked to elevate [her] legs as instructed because [her] left foot was swollen—just for one day." (*Id.*) Fifth, McCready argues that she exhausted her administrative remedies by: (1) contacting the "EAGAN Minnesota payroll and reported the [FMLA] fraud"; (2) calling "the postal inspection number" on January 31, 2020 at 2:05 a.m. and speaking with "Mrs. O'Connell"; and (3) "call[ing] another postal inspection number and request[ing] footage of several incidents that occurred in the Hempstead post office." (*Id.* at 3–4.)

McCready's opposition brief also raises, for the first time, a number of allegations not in the Complaint, including that: (1) she suffered sexual harassment "[s]ince 2015"; (2) "[a] lewd action occurred in the office in 2018"; (3) "HIPPA laws were constantly violated from 2006 through 2019"; and (4) "Rynne violated the Privacy Act by having other co-workers in on my meeting." (Opp'n at 3–4, 7.)

On reply, the Postmaster General argues that McCready has failed to exhaust her administrative remedies with respect to the claims of sexual harassment raised for the first time in her opposition brief because sexual harassment was not among the eight issues addressed in the EEOC Decision. (Reply at 2–4.) The Postmaster General also argues that, should the Court construe McCready's submissions as asserting claims pursuant to the Occupational Safety and Health Act ("OSHA") or the Health Insurance Portability and Accountability Act ("HIPAA")— statutes she cites for the first time in her opposition brief—such claims must be dismissed under Rule 12(b)(6) because neither statute provides for a private right of action. (*Id.* at 5.)

McCready filed a sur-reply, which the Court accepts given her pro se status. In this filing, McCready clarifies that she asserts "NO NEW CLAIMS" in her opposition and that all of the claims for which she seeks relief in this action relate only to the eight issues discussed in the EEOC Decision. (Sur-Reply at 1, 4.)

16

As set forth below, the Court dismisses McCready's claims as follows:

(1) McCready's claims against the USPS and Rynne are dismissed because they are not proper defendants under any of the cited statutes.

(2) McCready's discrimination claims arising out of incidents occurring before March 29, 2019 are dismissed because they are untimely.

(3) McCready's timely discrimination claims are dismissed because the Complaint fails to allege a prima facie case of discrimination under Title VII or the ADEA.

(4) McCready's reasonable accommodation claims arising out of alleged failures to accommodate before March 29, 2019 are dismissed because they are untimely.

(5) McCready's timely reasonable accommodation claims are dismissed because the Complaint fails to plausibly allege a prima facie case under the Rehabilitation Act.

(6) McCready's hostile work environment claims are dismissed because the Complaint fails to allege that one of her protected characteristics was the cause of the alleged hostile work environment.

(7) McCready's FMLA claims are dismissed because they are time-barred and because McCready did not exhaust her administrative remedies.

(8) To the extent the Complaint intends to allege any HIPAA and OSHA claims, these claims are dismissed because these statutes do not provide individual plaintiffs a right to sue.

## I.      RULE 12(B)(1) MOTION

As noted above, the Postmaster General's briefing does not specify which of his arguments support dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) versus failure to state a claim under Rule 12(b)(6). The Postmaster General's only argument properly made under Rule 12(b)(1) is his argument that the USPS and Rynne are not proper defendants under the relevant statutes—Title VII, the Rehabilitation Act, and the ADEA. *See Neary v. Weichert*, 489 F. Supp. 3d 55, 65 (E.D.N.Y. Sept. 25, 2020) (dismissing ADEA claim against president under Rule 12(b)(1) on the basis that the ADEA statute only waives the federal government's sovereign immunity with respect to the agency head); *Lynk v. Henderson*, No. 98-

17

cv-2086, 2000 WL 178859, at *3 (S.D.N.Y. Feb. 15, 2000) (dismissing Title VII claims against USPS employees under Rule 12(b)(1) because those employees are not "the head of the [USPS]").

Thus, in determining whether the USPS and Rynne may be sued under Title VII, the Rehabilitation Act, and the ADEA, the Court may consider matters outside the pleadings to the extent that the "offer[ed] extrinsic evidence . . . contradicts the material allegations of the [C]omplaint." *Harty*, 28 F.4th at 442. Here, there is no contradiction between the Complaint's allegations and the extrinsic evidence concerning the relevant facts. Accordingly, the Court does not consider the extrinsic evidence to resolve the question of whether the USPS and Rynne are proper defendants under Title VII, the Rehabilitation Act, and the ADEA.

### a.  The Postmaster General is the Only Proper Defendant

Although the Complaint brings claims against the Postmaster General, the USPS, and Rynne, the only proper defendant for the claims presented in the Complaint is the Postmaster General. Title VII grants courts jurisdiction to adjudicate employment discrimination claims by federal employees against "the *head* of the department, agency, or unit"—not against the department, agency, or unit itself, and not against other federal employees. *See* 42 U.S.C. § 2000e–16(a) (emphasis added). Further, Title VII defines the USPS as one such "department, agency, or unit." *Id.* Indeed, the right to sue notice issued by the EEOC to McCready specifically instructed her to "name as the defendant in the complaint [in any subsequent lawsuit] the person who is the official Agency head or department head, identifying that person by his or her full name and official title" and warned that "[f]ailure to do so may result in the dismissal of [McCready's] case in court." (EEOC Decision at 11.) For the same reasons, the only proper defendant for McCready's Rehabilitation Act and ADEA claims is the Postmaster General. *See*,

18

*e.g.*, *Sung v. DeJoy*, No. 22-cv-07682, 2024 WL 4107212, at \*7 (E.D.N.Y. Sept. 5, 2024)

("Plaintiff's Title VII, Rehabilitation Act, and ADEA claims may proceed only as to the

Postmaster General." (citing 42 U.S.C. § 2000e-16(c) (Title VII))); *Neary*, 489 F. Supp. 3d at 65

(ADEA); *Torres*, 2004 WL 691237, at \*2 (Title VII, ADEA, and Rehabilitation Act)).

Thus, McCready's claims against the USPS and Rynne are dismissed for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1).[10]

## II.    RULE 12(B)(6) MOTION

The Postmaster General's remaining arguments—that McCready failed to timely exhaust

her administrative remedies, that she failed to allege facts satisfying the elements of her Title

VII, Rehabilitation Act, and ADEA claims, and that her FMLA claims are time-barred—are

properly brought under Rule 12(b)(6) for failure to state a claim, not under Rule 12(b)(1) for lack

of subject matter jurisdiction. *See United States v. Wong*, 575 U.S. 402, 409–10 (2015) (holding

that "courts should treat [statutes of limitations] as nonjurisdictional" "absent . . . a clear

statement" from Congress); *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)

("[A]s a general matter, the failure to exhaust administrative remedies is a precondition to

---

[10]  The claims against Rynne suffer from two additional defects. McCready failed to serve Rynne
with the summons and Complaint, and the 90-day period within which to do so has long expired.
Further, there is no individual liability under Title VII, the ADEA, or the Rehabilitation Act.
*Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) ("[N]either [Title VII nor the ADEA]
subjects individuals, even those with supervisory liability over the plaintiff, to personal
liability."); *Palmer v. Shchegol*, No. 14-cv-4406, 2016 WL 5678544, at \*5 (E.D.N.Y. Sept. 30,
2016) ("It is well-established that the ADEA and Title VII do not create individual liability."
(citing *Guerra*, 421 F. App'x at 17)); *Harris v. Mills*, 478 F. Supp. 2d 544, 547–48 (S.D.N.Y.
2007), *aff'd*, 572 F.3d 66 (2d Cir. 2009) ("[C]laims under the Rehabilitation Act may not be
brought against individuals, either in their personal or official capacity").

bringing a Title VII claim in federal court, rather than a jurisdictional requirement."); *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver . . ." (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))); *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002) (holding that the requirement that a plaintiff "initiate contact with an EEO Counsel within 45 days of the date of the matter alleged to be discriminatory . . . is not jurisdictional, and the filing deadline is subject to waiver, estoppel, and equitable tolling").

In resolving a Rule 12(b)(6) motion, a court may consider documents that are incorporated by reference in the complaint, integral to the complaint, or otherwise the subject of judicial notice. *Clark v. Hanley* 89 F.4th 78, 93 (2d Cir. 2023). In order for a document to be incorporated by reference in the complaint, "the complaint must make a clear, definite and substantial reference to the document[]." *Jajati v. JPMorgan Chase Bank, N.A.*, 711 F. Supp. 3d 169, 173 (E.D.N.Y. 2024); *see also Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020). In order for a document to be integral to the complaint, "the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the document[] in framing the complaint." *Jajati*, 711 F. Supp. 3d at 173; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

As discussed above, *supra* at Background Section, McCready attached to her Complaint the EEOC Decision; accordingly, the Court may consider this document in resolving the Postmaster General's Rule 12(b)(6) motion. The Court may also consider the letters submitted by McCready to the Reasonable Accommodations Committee (ECF No. 40-2) and McCready's

20

Pre-Complaint Filing (ECF No. 43-1), which are attached to the Postmaster General's submissions and which the Court finds are both incorporated into the Complaint by reference and are integral to the Complaint.[11] *See Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 591 n.1 (E.D.N.Y. 2013) ("Because plaintiff's EEOC Charge is a public document filed in an administrative proceeding, and is integral to plaintiff's discrimination claims, the charge, together with the documents accompanying the charge filed in the EEOC proceeding, are also properly considered on a motion to dismiss.").

The Court addresses each of the Postmaster General's arguments below.

### a.    Scope of Claims

As a threshold matter, the Court must define the scope of the allegations and the specific legal claims brought by McCready in this case. Although the various filings appear to introduce allegations that were not in the Complaint or in the prior EEOC proceedings, McCready's sur-reply makes clear that she seeks judicial review only of the claims addressed in the EEOC Decision on July 12, 2022. (*See* Sur-Reply at 1 (representing that McCready is asserting "NO NEW CLAIMS," that "[t]here are not new issues submitted in my exhibits or my documents," and that "[t]he entire case has the nine issues that were investigated").) McCready's clarification is consistent with governing law that would require dismissal of any unrelated and unexhausted claims. *See Smith v. Colvin*, 574 F. App'x 55 (2d Cir. 2014) (summary order) (applying

---

[11] McCready has submitted additional, voluminous exhibits in opposition to the Postmaster General's Motion, apparently in response to his representation to McCready that "the Court may treat this [M]otion as a motion for summary judgment" and that "[i]f you have proof of your claim, now is the time to submit it." (Postmaster's Notice at 1–2.) The Court declines to "treat" the Postmaster General's Motion "as a motion for summary judgment" and, accordingly, does not consider factual evidence outside the pleadings, except as provided above.

exhaustion requirement to Title VII, the ADEA, and the Rehabilitation Act). Accordingly, the

Court considers McCready's allegations that, in violation of her rights as protected by Title VII,

the ADEA, and the Rehabilitation Act, she was:

> subjected . . . to discriminatory harassment/hostile work environment based on race (Black), sex (female), disability, age (YOB: 1963), and in reprisal for prior protected EEO activity when:
>
> 2. beginning on or about March 25, 2019, and continuing, Complainant's request for reasonable accommodation has not been granted and she is being sent home;
>
> 3. on April 1, 2019, Complainant was charged sixteen hours of Annual Leave for March 26, 2019 and March 27, 2019;
>
> 4. beginning on an unspecified date and ongoing, Complainant has not been afforded the opportunity to work overtime;
>
> 5. on an unspecified date(s), management disclosed Complainant's medical information with co-workers;
>
> 6. on an unspecified date(s) and ongoing, Complainant was humiliated and spoken to inappropriately on the workroom floor;
>
> 7. on unspecified date(s) and ongoing, Complainant's request for Sick Leave and/or Annual Leave is being charged to Leave without Pay (LWOP);
>
> 8. on unspecified date(s) and ongoing, management is tampering with Complainant's timecard and using her employee ID to call Complainant in for sick leave; and
>
> 9. on unspecified date(s), Complainant was non-selected for two promotions.

(*See* EEOC Decision at 1–11.) In construing McCready's submissions liberally, the Court also

considers the Complaint's allegation of unlawful termination, despite the fact that the Complaint

does not provide a date on which McCready's employment was terminated and that the EEOC

Decision did not address such a termination claim because McCready was still employed at the

time the EEOC Decision was issued. (*See* Compl. ¶ III.A.)

22

The Court does not consider any other alleged unlawful conduct that appears in McCready's briefing, but not in the pleadings or prior EEOC record. This includes, for example, McCready's claims in her opposition brief that Rynne sexually harassed McCready. (*See* Opp'n at 3–4.)

### b. Exhaustion of Administrative Remedies

Where, as here, an employee is not satisfied with the outcome of an administrative proceeding addressing claims for discrimination under Title VII, the ADEA, or the Rehabilitation Act, she may bring a lawsuit in federal district court. *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (requiring a Title VII plaintiff "to exhaust the administrative remedies provided by the statute" prior to filing suit in federal court); *Miller v. Kempthorne*, 357 F. App'x 384, 385 (2d Cir. 2009) (summary order) (applying exhaustion requirement to Title VII, ADEA, and Rehabilitation Act claims) (citing *Bruce*, 314 F.3d at 74). However, the district court "is empowered to hear only those claims that were included in the EEOC charge or are reasonably related to those included." *Hendry v. Donahoe*, 931 F. Supp. 2d 441, 447 (E.D.N.Y. 2013) (citing *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (Title VII claims)); *see also Miller*, 357 F. App'x at 385. "A claim is reasonably related if it would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination or if it chronicles additional instances of discrimination carried out in essentially the same manner as those originally alleged." *Hendry*, 931 F. Supp. 2d at 447.

As set forth above, McCready's EEOC Charge "claim[ed] that the Agency subjected her to discriminatory harassment/hostile work environment based on race (Black), sex (female) disability, age (YOB: 1963) and in reprisal for prior protected EEO activity." (EEOC Decision at 1–2.) McCready has not exhausted any discrimination claims based on her religion, nor does it

23

appear that see seeks to pursue such claims given her statement that her "entire case has the nine issues that were investigated." (*See* Sur-Reply at 1.) Further, although the Complaint alleges that she suffered retaliation for her participation as a witness in a case by another employee, such claim was not brought before the EEOC and, thus, has not been exhausted.[12] (Compl. ¶ III.A.) Similarly, although McCready alleged that the termination of her employment was unlawful in her Complaint (*id.*), she did not raise wrongful termination in her EEOC Charge and represents that "there are NO NEW CLAIMS" being asserted in this case. (*See* Sur-Reply at 1.) Thus, McCready's Title VII claims alleging discrimination based on her religion as well as any claims challenging the termination of her employment and retaliation based on her participation as a witness in another employee's claim against Rynne are dismissed because they have not been exhausted.

### c. Timeliness

A plaintiff bringing claims under Title VII, the ADEA, and the Rehabilitation Act "must initiate contact with a[n] [EEOC counselor] within 45 days of the date of the matter alleged to be discriminatory."[13] 29 C.F.R. § 1614.105(a)(1); *Tassy v. Buttigieg*, 51 F.4th 521, 531 (2d Cir.

---

[12] According to McCready, in 2015, she served as a witness in a discrimination claim brought by another employee against Rynne. (Compl. ¶ III.A; ECF No. 36-1 at 7.) Even if such claim was properly exhausted, McCready provides no facts from which the Court could reasonably find a causal connection between the protected activity and any timely adverse employment action, given the Court's finding that any claims arising out of adverse employment actions occurring before March 29, 2019 are time-barred. *See infra* Discussion Section II.c; *Harrison v. U.S. Postal Serv.*, 450 F. App'x 38, 41 (2d Cir. 2011) (summary order finding that a "temporal gap of almost two years" is "too great to give rise to an inference of causation"); *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 314 (2d Cir. 2005) (finding no causation where more than a year passed between the protected activity and the alleged retaliatory conduct).

[13] The plaintiff must also "file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e-5(e)(1), and

2022). "This 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." *Tassy*, 41 F.4th at 531. "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). Here, McCready "initiate[d] contact" with an EEOC counselor in her Pre-Complaint Filing on May 13, 2019. (ECF No. 1 at 9.) Thus, to be timely, the challenged conduct had to have occurred on or after March 29, 2018—i.e., within 45 days of May 13, 2019.

Notwithstanding this limitations period, if "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice, a continuing violation may be found." *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024). For the continuing violation doctrine to apply, there must be "proof of specific ongoing discriminatory policies or practices" or proof that "specific and related instances of discrimination are permitted by the defendant to continue unremedied for so long as to amount to a discriminatory policy or practice." *Massaro v. New York City Dep't of Educ.*, No. 21-266-CV, 2022 WL 1788203, at *2 (2d Cir. June 2, 2022) (summary order)

---

must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency, *id*. § 2000e-5(f)(1)." *Duplan*, 888 F.3d at 621-22; *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) ("Title VII's administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act." (citing 42 U.S.C. § 2000e-5(e)(1))). The Postmaster General has not raised—and, accordingly, has waived—any timeliness arguments under these limitations periods. *Hardaway*, 879 F.3d at 491 ("[F]iling of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver . . .").

(citing *Cornwell v. Robinson*, 23 F.3d 694,704 (2d Cir. 1994)); *see also Tassy*, 51 F.4th at 532 ("The doctrine applies to claims composed of a series of separate acts that collectively constitute one unlawful practice . . ."). Courts have emphasized that the "continuing violation" doctrine does not apply to "discrete unlawful acts, even where those discrete acts are part of a serial violation," but rather to "claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Massaro*, 2022 WL 1788203, at *2 (citing *Morgan*, 536 U.S. 101, 114–15 (2002)). If the court finds that the continuing violation doctrine applies, it "must then consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Banks v. General Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023).

With respect to discrimination and retaliation claims, "discrete acts" not covered by the "continuing violation" doctrine—"such as termination, failure to promote, denial of transfer, or refusal to hire"—are "easy to identify." *Morgan*, 536 U.S. at 114. "Each incident of discrimination . . . constitutes a separate actionable unlawful employment practice" under Title VII and Section 1981. *Id.* "Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Auth. of N.Y. and N.J.*, 685 F.3d 135, 157 (2d Cir. 2012).

By contrast, when considering a hostile work environment claim, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period"; so long as "an act contributing to the claim occurs within the filing period, *the entire time period* of the hostile work environment may be considered by a court for

the purposes of determining liability." *Banks*, 81 F.4th at 260 (emphasis supplied). In other words, "a charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period*." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Morgan*, 536 U.S. at 122).

Still, despite this relatively lenient standard, "the timely incident must be sufficiently related to the prior events so that they can be said to be part of the 'same' hostile work environment." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 91 (2d Cir. 2014) (summary order) (citing *Morgan*, 526 U.S. at 118); *see also Dziedzic v. State Univ. of New York at Oswego*, 648 F. App'x 125, 127–28 (2d Cir. 2016) (summary order) ("continuing violation" doctrine did not apply where untimely sexual joke "was made by different co-workers in a different section of the paint department than the [timely] harassment" alleged); *Sooroojballie v. Port Auth. of N.Y. and N.J.*, 816 F. App'x 536, 541–42 (2d Cir. 2020) (summary order) ("continuing violation" doctrine applied where "non-discrete acts" of "lack of training, evaluations, and discipline" occurred both inside and outside of the statutory period); *James v. Van Blarcum*, 782 F. App'x 83, 84–85 (2d Cir. 2019) ("continuing violation" doctrine applied where similar racial comments were made both inside and outside of the statutory period). Further, while the Second Circuit has not yet endorsed a specific test for determining whether alleged harassing acts are "sufficiently related," district courts have considered factors that include: "(1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and (4) whether the employer took any intervening remedial action." *Bonterre v. City of*

27

*New York*, No. 18-cv-745, 2021 WL 4060358, at *3 (S.D.N.Y. Sept. 7, 2021).

Here, the Complaint makes the following allegations:

(1) the challenged actions generally occurred during "approx. 2015 – 2019";

(2) "for two years" since October 2017, Rynne would "purposely turn the air on high blast and laugh as [McCready] choked" and would "threaten" other employees if they tried to help her;

(3) "in 2019," an incident occurred in which McCready was injured when she was in "an area that had no air conditioning"; and

(4) at an unspecified date, McCready was wrongfully terminated.

(Compl. ¶ III.E.) Further, the EEOC Decision, which is incorporated into the Complaint by reference, provides the following dates for McCready's allegations:

(1) "beginning at an unspecified time and ongoing," McCready was denied overtime hours;

(2) in 2015, McCready was denied a promotion to Lead Window Clerk;

(3) In January 2018, McCready was denied a promotion to Lead Clerk/Bulk Mail;

(4) on "several occasions" in February 2018, March 2019, and from August 6, 2019 through October 2019, the Postmaster General took McCready off the schedule in retaliation for her request for a reasonable accommodation;

(5) on August 17, 2018, Rynne yelled at McCready in front of customers;

(6) on February 21, 2019, Rynne disclosed McCready's medical information to co-workers;

(7) on April 1, 2019, McCready was incorrectly charged for sixteen hours of annual leave for absences on March 26, 2019 and March 27, 2019;

(8) during the week of April 1, 2019, the Postmaster General tampered with McCready's timecard and created a false FMLA claim on her behalf; and

(9) on April 19, 2019, the Postmaster General denied McCready's reasonable accommodation request.

(*See generally* EEOC Decision.)

Applying the statutory cut-off date of March 29, 2019 to McCready's discrimination and retaliation claims, the Court finds that some of McCready's claims are timely, some are timely in part, and some are untimely:

- McCready's discrimination and retaliation claims concerning the Postmaster General's alleged April 1, 2019 false charge of sixteen hours of annual leave and alleged April 1, 2019 tampering with McCready's timecard are timely. McCready's unlawful termination claim is likewise timely because, although the Complaint does not allege a specific date for her termination, the Complaint makes clear that McCready was still employed at the USPS when she submitted the Pre-Complaint Filing to the EEOC. Finally, McCready's Rehabilitation Act claim for reasonable accommodation is timely, to the extent it is founded on the Postmaster General's April 19, 2019 denial of McCready's request for an accommodation.

- McCready's claims relating to the alleged denial of overtime hours "beginning at an unspecified time and ongoing" are timely only in so far as they relate to a denial of overtime hours on March 29, 2019 or later. Likewise, retaliation claims relating to the Postmaster General's decision to take her off the schedule are timely only with respect to the alleged instances of retaliation that took place from August 6, 2019 through October 2019.

- The alleged denial of promotions to McCready in 2015 and January 2018 are untimely and, as "discrete acts," cannot be saved by the "continuing violation" doctrine. *See Morgan*, 536 U.S. at 114.

The remaining allegations in the Complaint and EEOC Decision support McCready's hostile work environment claims—Rynne's "ongoing" denial of overtime hours, his purposeful acts causing McCready to choke "for two years" beginning in October 2017, his yelling at McCready in August 2018, his tampering with McCready's timecard the week of April 1, 2019, and his taking her off the schedule on "several occasions" up through October 2019. (*See* Compl., EEOC Decision.) While many of these alleged incidents are otherwise untimely, to the extent they contribute to McCready's hostile work environment claim, they are timely because

29

these discrete acts are "sufficiently related" to each other and a portion of the acts occurred on or after March 29, 2019, including Rynne's conduct causing McCready to choke, which began in October 2017 and continued for two years, Rynne's tampering with McCready's timecard during the first week of April 2019, and Rynne's taking McCready off the schedule through October 2019. *See Davis-Garett*, 921 F.3d at 42.

In summary, the following claims are timely: (1) McCready's Rehabilitation Act claim founded on the Postmaster General's alleged failure to grant her request for a reasonable accommodation on April 19, 2019; (2) McCready's discrimination claims founded on the Postmaster General's alleged April 1, 2019 false charge of sixteen hours of annual leave, the Postmaster General's alleged April 1, 2019 tampering with McCready's timecard, and McCready's alleged wrongful termination; (3) McCready's retaliation claims founded on the Postmaster General's alleged decision to take her off the schedule "on several occasions" from August 6, 2019 through October 2019; and (3) McCready's hostile work environment claim based on alleged acts by Rynne. All remaining claims are untimely.

### d. Failure to State a Claim

In evaluating discrimination claims brought under Title VII, the ADEA, and the Rehabilitation Act, courts in the Second Circuit apply the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Carr v. New York City Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023) (Title VII and ADEA); *Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021) (ADA); 29 U.S.C. §§ 791(f), 794(d) (providing that discrimination claims under the Rehabilitation Act are determined using the standards set forth in the ADA). The Court addresses McCready's claims under each of these statutes below.

i.  Title VII and ADEA Discrimination Claims

For Title VII claims, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by alleging that she: (1) is a member of a protected class; (2) is qualified for her position; (3) suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024). If the plaintiff establishes a prima facie case, the defendant may rebut the presumption of discrimination by coming forward with evidence supporting a legitimate, nondiscriminatory basis for his actions. *McDonnell Douglas*, 411 U.S. at 802; *Puleo v. Masonic Med. Rsch. Inst.*, No. 23-7589-CV, 2025 WL 45393, at *1 (2d Cir. Jan. 8, 2025) (summary order). If the defendant meets this burden, the plaintiff may do one of two things to survive summary judgment: (1) "show that the employer's stated reason was false, and merely a pretext for discrimination"; or (2) "produc[e] other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class." *Bart*, 96 F.4th at 576 (discussing *McDonnell Douglas*, 411 U.S. at 804). The ultimate burden of persuasion "remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

ADEA claims are subject to the same burden shifting scheme set forth above with one exception: If the plaintiff has made a prima facie showing and the defendant has rebutted that showing by asserting a legitimate, nondiscriminatory justification, then at the third step, an ADEA plaintiff "must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action and not just a contributing or motivating factor." *Puleo*, 2025 WL 45393, at *3 (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)).

31

Concerning the "adverse employment action" requirement, under the Supreme Court's recent decision in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), a plaintiff bringing a Title VII discrimination claim "does not have to show . . . that the harm incurred was significant[,] serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."[14] *Id.* at 357. Rather, the plaintiff only needs to show "some harm respecting an identifiable term or condition of employment"—i.e., the plaintiff must have been "left [] worse off" but not necessarily "significantly so." *Id.* at 355, 359. The Second Circuit has not yet determined whether this newly articulated standard specifically applies to ADEA claims, but this Court agrees with other circuits and district courts within this Circuit that have held that it does, in particular because the ADEA's statutory text does not contain a "significance" requirement. *See, e.g.*, *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024); *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 90–91 (S.D.N.Y. 2024).

As to the timely incidents of alleged discrimination—the Postmaster General's alleged April 1, 2019 false charge of sixteen hours of annual leave without pay and alleged April 2019 tampering with McCready's timecard, and McCready's alleged wrongful termination—the Complaint fails to plead facts that, taken as true, establish a prima facie case for discrimination under Title VII or the ADEA.

---

[14] In light of the Supreme Court's decision in *Muldrow*, the Postmaster General's argument in his opening brief that a plaintiff must show a "materially adverse change in the terms and conditions of employment" is based on an incorrect legal standard. (*See* Mem. at 10.) Moreover, the *Muldrow* decision was published on April 17, 2024, more than three months *before* the Postmaster General filed his opening brief.

First, with respect to McCready's claims arising from the Postmaster General's alleged April 1, 2019 false charge of sixteen hours of annual leave without pay, the Complaint properly pleads the first two elements of a prima facie case—that McCready (1) is a member of a protected class and (2) was presumably qualified for the position she held for many years.[15] As to the third element—an adverse employment action—the Complaint's allegation is not sufficient to establish "some harm respecting an identifiable term or condition of employment," in particular because the EEOC Decision attached to McCready's Complaint indicates that the USPS rectified this mistake by converting the leave without pay to paid FMLA leave. EEOC Decision at 6; *Muldrow*, 601 U.S. at 355. Likewise, the Complaint does not contain any allegations that plausibly support an inference that this time entry error was the result of discrimination on the basis of race, color, or sex (under Title VII) or the basis of age (under the ADEA). Indeed, the fact section of McCready's Complaint contains no factual allegations supporting the conclusion that discrimination was a causal factor in this error. (*See* Compl. ¶ III.E.)

Second, with respect to the Complaint's allegation that Rynne tampered with McCready's timecard during the week of April 1, 2019, again, the Complaint fails to plead facts establishing a prima face case of discrimination under Title VII or the ADEA. As a threshold matter, the Complaint sufficiently alleges that McCready was a member of a protected class and that she was qualified for her position. However, the alleged incident—Rynne's creation of an

---

[15] Although McCready does not allege when her employment with the USPS began, in a May 4, 2024 letter to the Court, McCready states: "My employment with the United States Postal Service began on June 6, 1987 as a career civil service employee. There were no planned intentions for me to retire in March of 2022." (ECF No. 21 at 4.) Further, the EEOC Decision makes clear that McCready was employed there at least as of 2010. (EEOC Decision at 2 n.2.)

incorrect timecard for one week of McCready's employment—does not appear to meet even the liberal standard for an adverse action set forth in *Muldrow,* which requires only showing "some harm respecting an identifiable term or condition of employment." *See* 601 U.S. at 355, 359. Even if the adverse action element is properly pled, the Complaint fails to allege that race, color, sex, or age played a factor in the alleged timecard incident or to plead any facts establishing the causal connection between McCready's membership in a protected group and the adverse action as required under Title VII or between her age and the adverse action as required under the ADEA.

Third, with respect to McCready's alleged wrongful termination, the Complaint satisfies the first two elements of a prima facie case under Title VII and the ADEA by alleging that McCready (1) is a member of a protected class and (2) was presumably qualified for the position she held for many years. The adverse employment action requirement is also satisfied because an employee's termination is indisputably a "harm respecting an identifiable term or condition of employment" under *Muldrow*, 601 U.S. 355, 359. However, the Complaint again fails to allege facts supporting any inference that discrimination was the cause of McCready's termination. In fact, the Complaint makes no reference to her termination at all, other than checking the box labeled "termination of my employment." *See* Compl. ¶ III.A; *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) ("The *sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be *because of* [a protected characteristic]." (emphasis in original)); *Ostrowski v. The Port Auth. of N.Y. & N.J.*, No. 23-1116-CV, 2024 WL 3219310, at *2 (2d Cir. June 28, 2024) (summary order) (affirming dismissal of Title VII and ADEA claims there the allegations did not suggest that plaintiff was discriminated against on the basis of his national origin or age).

34

Accordingly, McCready has failed to state a claim for discrimination on the basis of race, color, or sex under Title VII or for age discrimination under the ADEA.

ii.  Title VII and ADEA Hostile Work Environment Claims

A hostile work environment claim under Title VII or the ADEA requires a plaintiff to show that her workplace was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020); *see also Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998) (holding that Title VII is not "a general civility code" but rather "forbids only behavior so objectively offensive as to alter the conditions of the victim's employment"). This inquiry "involves both objective and subjective elements." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009). To prevail on a hostile work environment claim, the plaintiff must show (1) that the alleged conduct was "severe or pervasive enough to create an *objectively* hostile or abusive work environment" and (2) that the plaintiff "*subjectively* perceive[d] that environment to be abusive." *Id.* (emphasis added). In the objective inquiry, courts assess the totality of circumstances, weighing various factors, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Patane*, 508 F.3d at 113. The plaintiff must prove that she faced "harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse"; in this inquiry, however, the Second Circuit has cautioned against "setting the bar too high." *Id.* The plaintiff must also prove that membership in a protected class caused her to experience a hostile work environment. *Id.* at 112; *see also* 42

U.S.C. § 2000e-2(a)(1) (prohibiting adverse employment actions "*because of* such [employee's] race, color, religion, sex, or national origin" (emphasis added)). In other words, courts apply a "but-for" causation test to determine whether the plaintiff would have experienced the same hostile work environment had he not been a member of the protected class at issue (e.g., McCready's race, color, sex, and age). *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020).

Here, the allegations of the Complaint and documents incorporated by reference regarding Rynne's mistreatment of McCready are sufficient to allege "severe or pervasive" harassment under Title VII or the ADEA. The allegations include: (1) Rynne's "ongoing" denial of overtime hours to McCready; (2) his conduct purposely causing McCready to choke "for two years" beginning in October 2017; (3) his yelling at McCready in August 2018; (4) his tampering with McCready's timecard during the week of April 1, 2019; and (5) his act of taking her off the schedule on "several occasions" up through October 2019. (*See generally* Compl., EEOC Decision.) Taken together, these incidents could constitute a "severe or pervasive" hostile work environment.

The Complaint, however, does not plausibly allege that the harassment McCready allegedly faced was *because of* one or more of the protected characteristics she claims. With respect to race, color, and sex, McCready checked these boxes on the Complaint form, but neither the Complaint nor any of the documents incorporated by reference in the Complaint or deemed integral to it otherwise allege that she experienced harassment *because of* these protected characteristics. (Compl. ¶ III.D.) The only other substantive allegation the Court has found tying the treatment McCready allegedly faced to her race, color, and sex is the allegation in her Pre-Complaint Filing that "two caucasian males . . . constantly do 12–15 hours a day while

36

[McCready is] told there's no overtime . . ." (Pre-Complaint Filing at 2.) This allegation, however, is not enough to support an inference that McCready's race, color, or sex was the but-for cause of Rynne's alleged harassment of McCready. With respect to age, McCready checked this box on the Complaint form and wrote "over 40+" in the margin, but the only other reference to age in either the Complaint or any documents incorporated by reference or deemed integral to the Complaint is in the EEOC Decision, which mentions that McCready was born in 1963. (Compl. ¶ III.D; EEOC Decision at 1.) Again, this lone reference to McCready's age is insufficient to support an inference that age was the but-for cause of the alleged harassment.

Accordingly, the Complaint fails to state a claim for hostile work environment under Title VII or the ADEA.

### iii.  Rehabilitation Act Claim

To establish a prima facie case under the Rehabilitation Act, the plaintiff must show that: (1) her employment is covered by the Rehabilitation Act;[16] (2) she is disabled as defined by the Rehabilitation Act; (3) she is qualified to perform essential functions of her job, with or without reasonable accommodation; and (4) she has experienced adverse employment action due to her disability, or her employer refused to provide a reasonable accommodation. *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (*per curiam*); *Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-1220-CV, 2024 WL 3264125, at *1 (2d Cir. July 2, 2024) (summary order).

---

[16] The parties do not dispute that McCready's employment is covered by the Rehabilitation Act.

The Court first addresses whether McCready is "disabled" as defined under the Rehabilitation Act.[17] "Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." *Freeman*, 818 F. App'x at 40 (quoting 42 U.S.C. § 12102(1)(A)). An individual may not be "regarded as" disabled, if the perceived impairment is "transitory"—having an "actual or expected duration of 6 months or less"—and "minor." 42 U.S.C. § 12102(3)(B).

Here, McCready's federal Complaint alleges that her disability is "occupational asthma/COPD caused by Postal Facility." (ECF No. 1 at 5.) McCready's opposition brief claims that, on February 2, 2019, she provided a doctor's note requesting that she "not work the window due to [her] occupational asthma condition worsening" and that she "had a touch of pneumonia." (35-1 at 9.) The EEOC Decision recites that McCready "testified that she had several medical conditions," including "a blood disorder since she was in her mid-twenties . . . [and] that no one in the office knew that she had this condition." (EEOC Decision at 2 & n. 5.) McCready also testified that she had "acute bronchitis around 2015; and a respiratory diagnosis in 2017." (*Id.* at 2.) McCready testified that "she cannot walk long distances and she cannot dance." (*Id.*) For purposes of the Postmaster General's Motion and accepting McCready's allegations as true, as this Court must at this stage, her asthma/COPD qualify as disabilities under the Rehabilitation Act. *See Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 183 (S.D.N.Y. 2023) (finding that COPD and asthma qualify as disabilities under the ADA).

---

[17] The Second Circuit instructs that the Rehabilitation Act takes its definition of "disability" from the ADA. 29.U.S.C. § 705(9); *Freeman v. Kirisits*, 818 F. App'x 34, 40 (2d Cir. 2020) (summary order).

The Court next turns to the third element of a prima facie case—whether McCready is qualified to perform the essential functions of her job, with or without reasonable accommodation. As noted above, given McCready's representations that she has been employed at the USPS since 1987, the Court construes McCready's pleadings liberally and understands that she is otherwise qualified for the job she held for over 30 years. (*See* ECF No. 21 at 4.)

Turning to the fourth prong, the Court next considers whether the Complaint plausibly alleges that McCready has experienced a failure to receive a reasonable accommodation or other adverse employment action due to her disability. For the reasons that follow, it does not. The Complaint does not clearly allege what reasonable accommodations McCready sought for her COPD and asthma. The only allegation in the Complaint regarding a denied request for reasonable accommodations is the allegation that Rynne denied her request to "stay off of [her] window duties for one wk due to a touch of pneumonia." (Compl. ¶ III.V.) The Court construes McCready's Complaint liberally as alleging that her pneumonia worsened her occupational asthma/COPD and that it is plausible that her need for a one-week accommodation was the result of her chronic disability and not the result of a temporary illness. Nevertheless, McCready does not plausibly allege that she sought reasonable accommodations for occupational asthma/COPD. The EEOC Decision attached to the Complaint states that McCready testified during the administrative proceeding that she had "several medical conditions," including "a blood disorder since she was in her mid-twenties," "acute bronchitis around 2015," and "a respiratory diagnosis in 2017." (EEOC Decision at 2.) It does not state what disability or disabilities each request pertained to. The EEOC Decision states that she submitted two reasonable accommodation requests: one for February 2019 to April 2019 and another for May 2019 to August 2019. (*Id.*) However, the EEOC found that McCready did not provide the proper documentation for her

39

requests. (*Id.* at 4–5.) While the Court is not required to defer to the EEOC's findings, McCready's Complaint does not plausibly allege facts showing that she properly sought and was denied a request for reasonable accommodations relating to her occupational asthma/COPD.

Accordingly, McCready's disability discrimination claim fails as a matter of law and is dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### iv.  Retaliation Claims

To plead a claim of retaliation under Title VII or the Rehabilitation Act, a plaintiff must allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Dooley v. Jetblue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015)); *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order) (ADA)). The ADEA's "antiretaliation provision that makes it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by [section 623 of the ADEA]." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021). An alleged retaliatory action is "materially adverse" if it is "significant"—i.e., if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Muldrow*, 601 U.S. at 357 (citing *Burlington N. & Sante Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006), and addressing Title VII's anti-retaliation provision).

Construing the pleadings liberally, the Court finds that the only allegation in the Complaint that potentially concerns retaliation is the allegation that McCready was a "witness interviewed for another employee lawsuit." (Compl. ¶ III.A.) Her opposition brief, however, notes that this occurred in 2015. (Opp'n at 5a.) She does not address what specific actions were

taken to retaliate against her for this conduct. Even if the Complaint included such allegations, any actions temporally proximate to the alleged protected activity in 2015 would likely fall outside of the statute of limitations cut-off date of March 29, 2019. *See Harrison*, 450 F. App'x at 41 (finding that a "temporal gap of almost two years" is "too great to give rise to an inference of causation"); *Burkybile*, 411 F.3d at 314 (finding no causation where more than a year passed between the protected activity and the alleged retaliatory conduct).

To the extent the Complaint alleges any retaliatory actions within the statutory period, it does not identify any specific alleged protected activities or retaliatory actions taken against McCready that are plausibly causally connected to such protected activities. Therefore, the Complaint fails to allege the required causal element of a retaliation claim.

Thus, McCready's retaliation claims are not plausible and are dismissed without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1915(e)(2)(B)(ii).

## v.  FMLA Fraud Claim

The FMLA has a general two-year statute of limitations and a three-year statute of limitations for "willful" violations. *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017) (summary order) ("FMLA claims are generally subject to a two-year statute of limitations, but that limitations period extends to three years when the violation is 'willful.'" (citing *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (*per curiam*))). Although the Complaint is not entirely clear on this point, it appears to allege that McCready first reported the alleged FMLA fraud "ON OCTOBER 3, 2017." (Compl. ¶ III.E.) Although the Complaint does not specifically allege that the FMLA fraud was willful, even assuming that it was, the statute of limitations for bringing an FMLA claim ran at least by October 3, 2021—nearly one year before

McCready brought the instant action on September 30, 2022. Accordingly, the FMLA fraud claim is time-barred.

Further, even assuming that McCready's FMLA claim was timely filed in this action, any FMLA claims are not plausible because the Complaint does not plead that McCready gave notice to her employer that she intended to take FMLA leave or that she was denied a benefit to which she was entitled under the FMLA. *See Sung*, 2024 WL 4107212, at *6 n.11.

For these reasons, McCready's FMLA claim is dismissed.

### vi. HIPAA and OSHA Claims

To the extent McCready's opposition brief intends to raise claims under HIPAA and OSHA, these claims are dismissed because neither statute provides employees a private right of action against their employers. *Donovan v. OSHRC*, 713 F.2d 918, 926 (2d Cir. 1983) (no private right of action under OSHA); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020) (no private right of action under HIPAA).

## III.    LEAVE TO AMEND

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009). However, "leave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

Applying this standard, the Court finds that amendment would be futile with respect to the following claims, and, accordingly, amendment is denied as to these claims:

(1) all of McCready's claims against the USPS and Rynne, who are not proper defendants in this action;

(2) McCready's claims that she suffered discrimination as a result of actions that occurred before March 29, 2019, which are time-barred;

(3) McCready's claims that she suffered retaliation as a result of actions that occurred before March 29, 2019, which are time-barred;

(4) McCready's claims that she was denied reasonable accommodations as a result of actions that occurred before March 29, 2019, which are time-barred;

(5) McCready's claims that she suffered discrimination on the basis of religion because McCready did not exhaust her administrative remedies with respect to these claims;

(6) McCready's claims for "sexual harassment" and "lewd action[s]" because she did not exhaust her administrative remedies with respect to these claims;

(7) McCready's claims for FMLA fraud because these claims are time-barred and because McCready did not exhaust her administrative remedies for these claims; and

(8) any claims by McCready for alleged HIPAA or OSHA violations because neither of these statutes provides a private right to sue.

The Court grants McCready leave to amend the Complaint with respect to all other claims, which are:

(1) McCready's claims that the Postmaster General discriminated against her on the basis of race, color, sex, or age through incidents that occurred on or after March 29, 2019;

(2) McCready's claims that the Postmaster General denied her requests for reasonable accommodation, to the extent that the Postmaster General denied any such requests on or after March 29, 2019; and

(3) McCready's claims alleging a hostile work environment on the basis of race, color, sex, or age.

Any amended complaint shall clearly be labeled "Amended Complaint," shall bear the same docket number as this Memorandum and Order, and shall be filed within thirty days from the date of this Memorandum and Order. Absent the filing of an amended complaint, judgment shall enter upon the expiration of the thirty-day period and this case will be closed.

The Court encourages McCready to consult with the Hofstra Law Pro Se Clinic located in the Central Islip Courthouse, which can provide free information, advice, and limited scope legal assistance to non-incarcerated pro se litigants. The Court notes that the Pro Se Clinic is not part of, nor affiliated with, the United States District Court. Consultations with the Pro Se Clinic can be conducted remotely via telephone. If McCready wishes to contact the Pro Se Clinic to make an appointment, she may email them at PSLAP@Hofstra.edu or leave a message at (631) 297-2575.

## CONCLUSION

For the reasons set forth above, the Postmaster General's Motion to Dismiss (ECF Nos. 38–45) is granted and the Complaint is dismissed in its entirety and with leave to amend, as set forth above.

The Clerk of Court is respectfully directed to mail a copy of this Order to McCready at her address of record and to note such mailing on the docket. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
     May 2, 2025

                                */s/ Nusrat J. Choudhury*
                                NUSRAT J. CHOUDHURY
                                United States District Judge